Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: 215.963.5000
Fax: 215.963.5001
www.morganlewis.com



**Jeremy P. Blumenfeld**
Partner
215.963.5258
jblumenfeld@MorganLewis.com

May 13, 2011

## VIA ECF AND OVERNIGHT MAIL

Honorable Kenneth M. Karas, U.S.D.J.
United States District Court
Southern District of New York
Hon. Charles L. Brieant, Jr. Federal Building and United States Courthouse
300 Quarropas Street, Room 533
White Plains, New York 10601-4150

*Re:*   ***Cullen v. Citibank, NA, Docket Nos.: 08-CV-10317 and 08-CV-10318 (KMK)***

Dear Judge Karas:

We represent Defendant Citibank in the above-referenced matter.  We write to bring to the Court's attention recent developments in this matter that have occurred since this Court's May 3, 2011 hearing.

As the Court is aware, in September 2010, this Court granted Citibank's motion to dismiss Mr. Cullen and Ms. Juliano's Second Amended Complaint, but granted Mr. Cullen and Ms. Juliano leave to amend to correct certain specific deficiencies in the complaint that were the basis of the Court's ruling, e.g., to permit Mr. Cullen and Ms. Juliano to allege that they filed a timely charge of discrimination with the EEOC as a prerequisite to their age or disability discrimination claims.

During the May 3, 2011 hearing, Mr. Cullen represented to the Court several times that he intended to appeal this Court's ruling granting Citibank's motion to dismiss the Second Amended Complaint.  Importantly, Mr. Cullen never mentioned even the possibility that he might file a Third Amended Complaint.

On May 6, 2011, however, Mr. Cullen sent an email stating that he intends to file a Third Amended Complaint in this case.  (Exhibit A).  Moreover, although Mr. Cullen does not indicate the full extent of his claims, it is apparent that Mr. Cullen is not seeking to amend merely to cure



Honorable Kenneth M. Karas, U.S.D.J.
May 13, 2011
Page 2

the deficiencies the Court found in dismissing Mr. Cullen's Second Amended Complaint.[1]
Indeed, Mr. Cullen stated that:

> My THIRD AMENDED COMPLAINT has  a special focus on having Jeremy
> [Blumenfeld, undersigned counsel] fined, disbarred and imprisoned for
> threatening and tampering with a Federal Witness, he knows to be disabled/
> AWDA!

(Exhibit A).

*Pro se* parties are frequently afforded greater patience and understanding than that afforded to
parties represented by counsel.  To that end, and in recognition of his *pro se* status, Citibank has
been very patient with Mr. Cullen and his tactics to date.  But it is apparent now that Mr. Cullen
is – and has been for some time – abusing the litigation process.[2]  He has had years to try to state
a cognizable claim, but has been unable to do so.  Nor could he, consistent with Fed. R. Civ. P.
11, amend his complaint now to cure the fundamental problems this Court found with his prior
complaint.  Instead, Mr. Cullen resorts to wild allegations about harm allegedly caused to *others*
that he has no constitutional standing to make and baseless accusations against the lawyers that
represent Citibank.  Importantly, Mr. Cullen has been warned by this Court before about his lack
of standing and his personal attacks on counsel, but he refuses to listen.

Furthermore, Mr. Cullen's May 6, 2011 email makes clear that he intends to publish to third
parties the contents of certain documents containing Citibank customer information.   (Exhibit
A).  Publishing such material, however, would violate Magistrate Judge Yanthis express ruling
prohibiting Mr. Cullen from doing precisely that.

Specifically Magistrate Judge Yanthis held a hearing in this matter on May 3, 2010.  (A copy of
the transcript of the hearing is attached as Exhibit B).  During that hearing, Mr. Cullen indicated
that he had "boxes" of Citibank related documents, at least some of which contain Citibank
customer information.  Mr. Cullen further expressed the intent to disclose those documents to
third parties.  To address Citibank's confidentiality, privacy and privilege concerns, Magistrate
Judge Yanthis ordered Mr. Cullen to turn over for *in camera* inspection "any materials,
documents that you have that deal with customers of Citibank:"

---

[1]     It is unfortunate that Mr. Cullen did not raise these issues at the May 3, 2011 hearing, so
that they could have been addressed by the Court at that time.  Instead, Mr. Cullen
waiting until *after* the hearing, forcing Citibank to incur additional expense responding to
these new issues and wasting further judicial resources.

[2]     Mr. Cullen also has been communicating directly with my assistant (despite repeated
requests that he not do so), including asking her to provide him with photographs of me.
(Exhibit A).



Honorable Kenneth M. Karas, U.S.D.J.
May 13, 2011
Page 3

> The COURT:  Okay.  Here's what I'm going to direct.
> Number one, these documents should not be filed in this court in this case at this time until further order of the Court.
> Number two, I am going to have to look at by myself in camera any documents that deal with customers of Citibank.  You can keep a copy, but I need to see a copy so I can tell and try to make a determination whether or not these documents – what should happen to these documents.  I do not need to see handbooks, anything that are payroll records of Ms. Juliano, or anything of that nature.  But what I need to see are any materials, documents that you have that deal with customers of Citibank.  All right?
> Do you have an understanding what I'm looking for?
>
> MR. CULLEN.  I do, your Honor.  It's – you're very clear.

(Exhibit B, at 9 of 12).  In addition, Mr. Cullen was ordered not to distribute any of those documents to any third parties until Magistrate Judge Yanthis reviewed and ruled upon those documents:

> THE COURT:  All right.  I'm going to have to look at these documents before there is going to be any further distribution of these documents to anyone.  All right?  You [Mr. Cullen] can keep a copy of them, but no further distribution or dissemination of these documents to anyone.  If anyone asks you why you didn't bring documents [in response to a subpoena], you can say that the judge in the Southern District of New York has directed you not to make any distribution until I look at these documents in camera and determine what should happen to them.

(Exhibit B, at 10-11 of 12).

To date, there is no indication – on the docket or in any communications by Mr. Cullen to counsel for Citibank – that Mr. Cullen ever turned over copies of any of these documents to Magistrate Judge Yanthis, as he was required to do.  (Exhibit B at 9 of 12).  And Magistrate Judge Yanthis has not modified his May 3, 2010 Order or otherwise permitted Mr. Cullen to distribute any of these documents.  As such, Mr. Cullen's May 6, 2011 email expresses Mr. Cullen's clear intent to violate Magistrate Judge Yanthis's Order prohibiting Mr. Cullen from "distribut[ing] or disseminat[ing]" any such documents.

Citibank has been forced to incur substantial expense responding to Mr. Cullen's accusations and vexatious tactics.  But enough is enough.  If Mr. Cullen wants to appeal, he should do so, and the parties can litigate the merits of – and timeliness – of that appeal to the Second Circuit.  Mr. Cullen should not, however, be permitted now to file a Third Amended Complaint making entirely new allegations, forcing Citibank to incur yet additional cost.  Nor should Mr. Cullen be



Honorable Kenneth M. Karas, U.S.D.J.
May 13, 2011
Page 4

permitted to violate Magistrate Judge Yanthis's May 3, 2010 Order with impunity, as he suggests in his May 6, 2011 email. (Exhibit A).

Accordingly, Citibank respectfully requests that the Court issue an Order prohibiting Mr. Cullen from filing a further amended complaint without leave of Court, and requiring that any such amended complaint be limited to curing the deficiencies that formed the basis of the Court's prior Order granting Citibank's motion to dismiss. Furthermore, Citibank respectfully requests that the Court issue an Order warning Mr. Cullen about the possible sanctions if he violates Magistrate Judge Yanthis's May 3, 2010 Order so that Mr. Cullen understands the consequences of his threatened disclosures. Lastly, in light of Mr. Cullen's threatened disclosures, Citibank respectfully requests that this matter be addressed on an expedited basis to minimize the privacy and confidentiality risks to Citibank and its customers.

Thank you for you consideration of this matter.

Respectfully submitted,

*Jeremy P. Blumenfeld*

Jeremy P. Blumenfeld


cc:     John J. Cullen (via overnight mail)
        Veronica Juliano (via overnight mail)

# EXHIBIT "A"

## Blumenfeld, Jeremy P.

| | |
|---|---|
| **From:** | John Cullen [cullenusmc@msn.com] |
| **Sent:** | Friday, May 06, 2011 5:39 PM |
| **To:** | CC-ROY DURHAM, ESQ. |
| **Cc:** | Moore, Sandra D.; Kelly, Melissa R.; C-ESQ-16 SDMA-(VJ) Seybert,John; C-ESQ-17 SDMA-(VJ) Berstein, Michael; C-ESQ-18-James Dinan, Tr Legal; C-ESQ-19-Ralph ENGEL; C-ESQ-21B-GOLD,Martin R.; C-ESQ-21-Reich, Edward J.; C-ESQ-22 Edward Avery; C-ESQ-23 LOREN SATTINGER; Mirabello, Francis J.; C-HR-10 Fowsar,Devina; C-ESQ-07 Thompson,Deborah; Blumenfeld, Jeremy P.; Chairman-VIKRAM PANDIT; F-CULLEN, JOHN; C-FED JUDGE KARAS, U.S.D.J.; C-FED JUDGE YANTHIS; CI-D.O.L.-Hilda Solis,Secy DOL; CI-D.O.L.-MARIE ABUAN-EBSA; CI-D.O.L.-ROBERT GOLDBERG,ARD; CI-D.O.L.-Valerie Tourso-EBSA, MGR; CX-VERONICA JULIANO |
| **Subject:** | Re: Court Today 5/3/11 |

Roy:

---------------------------------------------------------------------TO BE COPIED AND PASTED TO CULLEN'S TIME LINE SUBMITTED ONLY TO CITIBANK'S LAWYERS ----------------------------------------------------

H, D, & AE
4/2/11        Plaintiffs VJ & Cullen receive notice dated 3/31/11 to appear in White Plains Federal Court on 5/3/11 for a "Status Conference".

AE-4/12/11   Cullen has to testify again, after Citibank again unilaterally violates and voids its Revised Severance, Confidentiality & Letter of Indemnification Agreement.  It failed to provide a lawyer
                to  advise Cullen after he was subpoenaed by another Citibank's client with lawyers suing Citibank.

D-4/16/11     VJ signed a notarized letter addressed to Federal District Judge Karas requesting that she be teleconferenced into the 5/3/11 "Status Conference".

AE-4/27/11     Because Cullen had not yet received his transcript copy of his sworn 4/12/11 statement, mailing of  VJ's 4/16/11 certified letter to Judge Karas,  co-defendant RALPH ENGEL & co-defendant Citibank's lawyer Blumenfeld, had to be delayed until 4/27/11.

H, D, & AE
5/3/11   Judge Karas ruled against co-plaintiffs' 4/16/11 request that  VJ be telephonically connected to the 5/3/11 hearing; the Judge does not want to run any risk VJ would make a recording at her end.  Co-Plaintiff VJ must be physically present in Judge Karas' Courtroom, if she wants to be heard.

Judge Karas ruled for Cullen and agreed with Federal Magistrate Judge George Yanthis previous 5/4/10 action.  Cullen owned the Dennis Documents and Time-Line and can do whatever he wants.

Judge Karas ruled against Cullen's request that a court employee monitor the redaction of said documents jointly by both defendant Citibank and co-plaintiffs for the purpose of not showing the names of innocent Citibank's employees who also witnessed wrongdoing.

Citibank's Blumenfeld also refused Cullen's offer to meet to redact Cullen's documents, "because Cullen told Judge Yanthis on 5/4/10 Cullen did not have any of "Citibank" documents".  Blumenfeld, apparently still

1

suffering from severe memory loss, forgot that at the 5/4/10 hearing Cullen successfully defended his ownership of the Dennis' Documents by explaining that under New York State's abandoned property, marital property, and gifting rules, all Dennis' Documents and Time-Line belonged to Cullen.  Blumenfeld and both Federal Judges can not even object to Cullen's knowledge of NYS laws and California's probate laws of subpoena.  These are state laws are not the province this Federal District Court.  Blumenfeld put himself in great legal peril and opened himself to malpractice claims by both Citibank and its exposed employees, since he is NOT a member in good standing in either the New York or California  bar.    Therefore, Durham's California Subpoena is in force and Cullen is the sole owner of all the Dennis' Documents created within New York State and knowingly abandoned by Citibank within New York State after 3/24/08.

 D- 5/5/11  Cullen called the Federal Pro Se clerk to get guidance as what to do about Durham's unanswered California subpoena of the "Dennis Documents and Time-Line"?  The Clerk would not give legal advice, then added, <u>Judge Karas is still waiting for plaintiffs letter explaining the delay in submitting our THIRD AMENDED COMPLAINT, since our case is only DISMISSED WITHOUT PREJUDICE, and WAS NEVER CLOSED, in spite of what Citibank's Blumenfeld stated.</u>

Also, the Federal Pro Se Clerk said that since Durham is a lawyer, you are expected to have the the knowledge of how to request the required form for, "I am a lawyer and I want to be added as a a Co-Plaintiff with Co-Plaintiffs *Pro se*".  Cullen told the Pro Se Clerk that Co-Plaintiffs *Pro Se* THIRD AMENDED COMPLAINT will be submitted within the next 60 days,  and we do not speak for Durham.

D-5/6/11  Cullen proposes to Durham by this email, rather than Durham paying for Cullen &  VJ  to travel with boxes of documents to appear in San Diego,  why can't Durham and his lawyer visit Cullen's Westchester storeroom,  with VJ, and pick out and copy the documents of interest to him, the DA,  and Durham's affiliated lawyers?

By means of this email, Cullen & VJ request that Citibank's lawyers also notify the Smith Barney / Citibank's employees named in my Dennis Documents & Time-Line that within a few weeks, Durham will have their names on documents.  Also, since A.D.A. Elisabeth Loewy told VJ & Cullen it was Durham who had her contact us, Cullen suspects Durham also contacted the news media.  It is understood that the Trust Department moved from Manhattan to the industrial area of Queens to be sold, without listing the $83,000,000 + pending liabilities.  "If" Durham leaks documents these subpoenaed documents revealing the names of innocent past and present employees,  I plan lead a suit against  both MORGAN, LEWIS & BOCKIUS for malpractice and Citibank for gross negligence, since they refused this opportunity to redact documents and protect VJ, me and other innocent employees from Durham and the other client lawyers.

--------------------------------------------------------------------------------------ABOVE IS TO BE ATTACHED TO CULLEN'S PREVIOUSLY SUBMITTED TIME LINE --------------------------------------------------------------

John

PS:  Note to Jeremy.  I will stop sending emails to your assistant Sandra  right after your SDMA goons and you apologize directly to my assistant Veronica for ILLEGALLY dragging her into Brooklyn Federal Court as a disabled Plaintiff without a lawyer.  My THIRD AMENDED COMPLAINT has  a special focus on having Jeremy fined, disbarred and imprisoned for threatening and tampering with a Federal Witness, he knows to be disabled/ AWDA!

**From:** Blumenfeld, Jeremy P.
**Sent:** Tuesday, May 03, 2011 9:49 AM
**To:** 'cullenusmc@msn.com'
**Cc:** Kelly, Melissa R. ; 'cocoroxj55@yahoo.com'
**Subject:** Re: Court Today 5/3/11

Dear Mr. Cullen,

I ask you again to please stop sending emails to my assistant.

Further, I do not know what draft book outline you are talking about, but Citibank does not consent to, or concur with, the proposed "timelines" or book outlines you have emailed over the last several years. We are not "good to go" as you suggest.

Jeremy
Jeremy P. Blumenfeld
Morgan, Lewis & Bockius LLP
1701 Market Street | Philadelphia, PA 19103-2921
Direct: 215.963.5258 | Main: 215.963.5000 | Fax: 215.963.5001

101 Park Avenue, New York, NY 10178-0060
Direct: 212.309.6958 | Main: 212.309.6000 | Fax: 212.309.6001

jblumenfeld@morganlewis.com | www.morganlewis.com
Assistant: Sandra D. Moore | 215.963.4971 | sdmoore@morganlewis.com

---

**From:** John Cullen [mailto:cullenusmc@msn.com]
**Sent:** Tuesday, May 03, 2011 09:13 AM
**To:** Moore, Sandra D.
**Cc:** Mirabello, Francis J.; Kelly, Melissa R.; CX-VERONICA JULIANO <cocoroxj55@yahoo.com>; Blumenfeld, Jeremy P.; F-CULLEN, JOHN <cullenusmc@msn.com>; C-ESQ-19-Ralph ENGEL <rengel@sonnenschein.com>; C-ESQ-21B-GOLD,Martin R. <martin.gold@snrdenton.com>; C-ESQ-21-Reich, Edward J. <ereich@sonnenschein.com>; CI-D.O.L.-Hilda Solis,Secy DOL <solis.hilda@dol.gov>; CI-D.O.L.-MARIE ABUAN-EBSA <abuan.marie@dol.gov>; CI-D.O.L.-ROBERT GOLDBERG,ARD <goldberg.robert@dol.gov>; CI-D.O.L.-Valerie Tourso-EBSA, MGR <tourso.valerie@dol.gov>
**Subject:** Court Today 5/3/11

Dear Sandra:

Sorry to bother you, but I understand Jeremy is out of the office and out of touch.

Because of prior commitments, my son will NOT be in Court today to ask why the defendant hired that person to follow his mother and 8 month old baby nephew around on 10/29/09 and then take pictures of our house and cars, again. Today, I will finally be given the opportunity to discuss with Judge Karas his signing the subpoena for the Detective's report, please advise Jeremy.

As you know, Jeremy is hung up over Veronica's 4/16/11 letter to the Judges. After Veronica and I signed and notarized her 4/16/11 letter we decided NOT to submit a "JOINT NOTICE of APPEAL, today, because we do not want to jeopardize our "joint" standing with D.O.L. As of now, I am appealing Judge Karas orders and Veronica plans to continue separately with D.O.L.

3

Since I have not heard back from Jeremy about his review the confidential draft  book outline about the defendant, its lawyers, its government officials and the Courts, it seems we are good to go.  Therefore, would it be possible for you to send me 8" by 10" full face photo of Jeremy for publication in the book?  Jeremy and I got both got upset that someone in the Eastchester Court made a remark that Jeremy has one ear bigger than the other.  The public photo Jeremy put on your Firm's web site only has one ear showing, which will only fuel the speculation upon the book's publication.   That incident is one of many incidents I find upsetting and is going to be addressed in the book.   Like they say, a picture is worth a thousand words.

John J. Cullen, Co-plaintiff, Pro Se   7:08 CV 10317 /10318 (KMK) (GAY)

**From:** Carol Cullen
**Sent:** Monday, May 02, 2011 9:32 PM
**To:** John Cullen
**Subject:** Fwd:

Pictures

DISCLAIMER
This e-mail message is intended only for the personal use
of the recipient(s) named above. This message may be an
attorney-client communication and as such privileged and
confidential and/or it may include attorney work product.
If you are not an intended recipient, you may not review,
copy or distribute this message. If you have received this
communication in error, please notify us immediately by
e-mail and delete the original message.

4

# EXHIBIT "B"

1053culMS.txt

1

```
     1053culMS
1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
2
3   JOHN J. CULLEN and
3   VERONICA JULIANO,
4
4              Plaintiffs,
5
5          v.                    08 Civ. 10317(KMK)(GAY)
6                                08 Civ. 10318(KMK)(GAY)
6   CITIBANK, N.A., a/k/a CITIGROUP,
7
7              Defendant.
8
8   ------------------------------x
9
9                                White Plains, N.Y.
10                               May 3, 2010
10
11  Before:
11
12            THE HONORABLE GEORGE A. YANTHIS,
12
13                            Magistrate Judge
13
14                   APPEARANCES
14
15  JOHN J. CULLEN
15       Plaintiff Pro Se
16
16  VERONICA JULIANO
17     Plaintiff Pro Se
17
18
18  MORGAN, LEWIS & BOCKIUS, LLP
19       Attorneys for Defendant
19  JEREMY P. BLUMENFELD
20
20
21
21
22
23
24
25  Digital recording.
            MARY M. STATEN, CSR, RPR, RMR
                 (914) 390-4027
```

2

```
     1053culMS
1           THE COURT:  Good morning.
2           THE DEPUTY CLERK:  In the matter of John Cullen, et
3   al., against Citibank, et al.
4           THE COURT:  All right.  Counsel, and let's see,
5   plaintiffs, Mr. Cullen and -- let's see -- that's Ms. Juliano.
6   All right.  And let's see.  Mr. Blumenfeld.
7           MR. BLUMENFELD:  Good morning, your Honor.
8           THE COURT:  All right.  Now, as you know, this matter
9   has been referred to me for general pretrial matters by Judge
10  Karas.  I do recall having some contact with this case before,
11  at, I believe, a settlement conference.
```

Page 1

1053culMS.txt

```
12          I just need to find out from both sides just where you
13   are in discovery.  All right?  Let me do it this way.  I'm
14   going to hear from all of you, but let me hear from -- let's
15   see -- Mr. Blumenfeld first as to just where you believe things
16   are and what needs to be done.
17          MR. BLUMENFELD:  Sure.  Thank you, your Honor.
18          With respect to discovery, there has not been any
19   discovery in the matter so far.  There is a motion to dismiss
20   that's been pending.  It was originally filed in September, and
21   that's now fully briefed and pending before Judge Karas.
22          THE COURT:  Oh, okay.
23          MR. BLUMENFELD:  Judge Karas had previously denied any
24   requests for discovery as being premature while the motion was
25   pending.
```

MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

3

1053culMS

```
1          THE COURT:  Okay.  But at this point, he's indicating
2   that discovery should go forward, I take it.
3          MR. BLUMENFELD:  I don't think so, your Honor.
4          And if I may, Mr. Cullen and Ms. Juliano wrote a
5   letter about certain documents that they have in their
6   possession, wanting to know where to file those documents, and
7   asking for a conference, either with Judge Karas or your Honor,
8   to discuss that.
9          THE COURT:  Okay.  So that's pretty much the scope of
10   what we need do here today, from your point of view.
11          MR. BLUMENFELD:  I think so.
12          And also, we have, frankly, some concerns about those
13   documents.  I understand that a number of them are Citibank
14   documents that the plaintiffs had when they were employed by
15   Citibank.  And there very well may be privileged material
16   within them because of the nature of what these two
17   individuals' job duties were.  And they also, I would suspect,
18   contain confidential information belonging to Citibank
19   customers.
20          THE COURT:  Okay.  Now, what's your position on the
21   request for these documents, that they should -- if you could
22   just explain that again to me.
23          MR. BLUMENFELD:  Sure, your Honor.
24          These are documents that Mr. Cullen and Ms. Juliano
25   already have that they obtained, I gather, during the course of
```

MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

4

1053culMS

```
1   their employment at Citibank.
2          THE COURT:  Yes.
3          MR. BLUMENFELD:  And Citibank would either like those
4   documents returned to it to hold in safekeeping pending any
5   ruling on the motion to dismiss, and if discovery is permitted,
6   to address them that way, or, at a minimum, for them to be held
7   by the Court in the equivalent of an in-camera proceeding.
8          THE COURT:  Okay.  All right.  Well, let me hear
9   from -- let's see -- Mr. Cullen and Ms. Juliano.
10          Mr. Cullen, you could go first.  I know you're
11   representing yourself.
12          MR. CULLEN:  Correct.
13          And I also am here with a limited power, durable
14   power, of attorney, which Ms. Juliano signed, allowing me to
15   speak for her, just on legal matters in this case.
16          THE COURT:  Okay.  Let me just get that situation
```

Page 2

1053culMS.txt

17  straight.
18          when you're pro se -- okay? -- you could just
19  represent yourself.  Even with a power of attorney, you cannot
20  represent anybody else.
21          So, Ms. Juliano, you're going to have to represent
22  yourself in this case.  You can adopt arguments that are being
23  made by Mr. Cullen, but Mr. Cullen cannot really legally
24  represent you or represent you in any arguments that are being
25  made.
                    MARY M. STATEN, CSR, RPR, RMR
                          (914) 390-4027
                                                                    5

1053culMS
 1          So with that understanding, Mr. Cullen, go ahead.
 2          MR. CULLEN:  On April 17th of last year, your Honor,
 3  we came to this court.  I brought in as a federal witness
 4  Ms. Juliano to ask the Court the question:  Which court should
 5  she file documents that her husband took from her while he was
 6  sick?  The promise was that Mr. Blumenfeld would prepare a
 7  petition to you to have the question answered.  Instead, he
 8  didn't do that.  He sent her a letter a week later saying
 9  that -- notifying her that she was fired and that she didn't
10  receive her 60 days' New York State mandated payment.  She
11  didn't receive any severance.
12          And he then threatened, and in my view, interfered
13  with a federal witness who was trying to present evidence here,
14  which I believe is a violation of Sarbanes-Oxley, because she's
15  trying to turn information over to a government official.
16  Sarbanes-Oxley is very clear that anyone who interferes with
17  that process is subject to fines and up to ten years in prison.
18          I think Mr. Blumenfeld, in his enthusiasm to represent
19  Citibank, violated that.
20          The question before the Court on April 17th was:
21  which court gets these papers?  She was in Queens court.  I
22  think abandoned property is a state court matter, but we
23  weren't sure.  This Court never was given the opportunity to
24  rule.
25          Now, because of the delay a year later, on
                    MARY M. STATEN, CSR, RPR, RMR
                          (914) 390-4027
                                                                    6

1053culMS
 1  August 24th, one of the clients died.  Her son looked through
 2  documents, found whatever he found, and he has been on us
 3  trying to get us to be -- he originally said we were going to
 4  be named as co-defendants with the bank, because we were the
 5  trust officers in New York State Supreme Court.  Going through
 6  his case as to was it a trust, was it not a trust, who gets the
 7  money, we were silent.  We were told to be silent by bank's
 8  counsel, a gentleman by the name of Ralph Angle.  We had
 9  written a twelve-page memorandum as to why the trust is not a
10  trust and the money should just be given back and let the laws
11  of intestacy take hold.
12          Because Citibank took it in as a trust, it changed the
13  laws of distribution, this family was disinherited.  They're
14  very, very mad, they're very angry.  And I have here notice
15  that Veronica and I are to appear in San Diego Probate Court,
16  that he's going to subject us to be witnesses in his lawsuit
17  against Citibank.
18          So the primary reason for me writing this was:  which
19  court do we turn these in to?  Now I have a court, California
20  court, demanding these documents.  And the documents, I
21  believe, are not Citibank's any longer, because when
                              Page 3

1053culMS.txt

```
22    Ms. Juliano got sick on March 9th, '07, her husband called the
23    following Monday and said she's not going to be able to return
24    to work.  She was put in a psychiatric hospital for a couple of
25    weeks, and then slowly recovered and still actually is
                    MARY M. STATEN, CSR, RPR, RMR
                         (914) 390-4027
```

7

1053culMS

```
1     recovering.  And he said, "Get this stuff out of the house."
2     The bank did not act.  On March 24th, '08, more than one year
3     later, he sent a letter to the bank and to her manager, saying,
4     "Get this stuff out of my house."  The bank did not react.
5              We came to this court on 4/17/09, another year later,
6     and said, "which court gets this material?" because it's been
7     abandoned under New York State law by Citibank."
8              We consider these documents abandoned property.  They
9     were abandoned in the Juliano home.  And we now have a request
10    to give these to appellate appointed court.  This Court
11    apparently has no interest in looking at the documents, because
12    it's taken more than a year to answer the question that's still
13    not answered.
14             THE COURT:  All right.  Now, you're saying that the
15    California court is directing you to provide those documents to
16    them?
17             MR. CULLEN:  Yes.
18             THE COURT:  How did they do that?
19             MR. CULLEN:  It's their -- he's the executor of his
20    mother's estate.  She was the primary beneficiary under the
21    Ruth Herzog so-called "trust."  And he is executor of her
22    estate.  His duty is to collect all the assets.  So he's going
23    back and trying to collect this million dollars or so from
24    Citibank.  But to do that, he's making us be witnesses.
25             To be honest, Jeremy, I actually thought you would
                    MARY M. STATEN, CSR, RPR, RMR
                         (914) 390-4027
```

8

1053culMS

```
1     intervene and stop this nonsense.
2              THE COURT:  Okay.  Well, let me ask defendant.
3              Mr. Blumenfeld, if you could can just comment on
4     what's being said here.  I just want to make sure I understand.
5              These are documents that belong to Citibank right now
6     in the possession of plaintiff, one plaintiff or both
7     plaintiffs?  I'm not quite sure at this point.  They're saying
8     they've been asked or the executor is being asked to file these
9     documents or bring them to the attention of the Court in
10    California.  And if I understand, Citibank's position is that
11    they shouldn't be filed in any court.  I know you're saying in
12    this court, but I think you're saying in any court, and the
13    Court should look at them to see if they should return to
14    Citibank?
15             MR. BLUMENFELD:  There are a lot of issues there, your
16    Honor, if I may.
17             First, with respect to the proceedings in California,
18    it's not entirely clear to us what's going on in California.
19    There's a gentleman by the name of Mr. Durham, who I gather is
20    an attorney in some capacity.  But he's acting, I believe,
21    pro se in an intestacy action that was filed in San Diego.  He
22    e-mailed, as best I can tell, your Honor, because we are not
23    parties to that action and I'm not receiving all the
24    communications about this.  But from what I gather, he sent an
25    e-mail to Mr. Cullen and Ms. Juliano that included a forum
                    MARY M. STATEN, CSR, RPR, RMR
                         Page 4
```

1053culMS.txt
                    (914) 390-4027
                                                                    9
1053culMS
 1    notice of deposition, which had a date and time in California
 2    for them to appear.
 3            I don't know how he would be serving a deposition
 4    asking them or trying to compel them as nonparties to an action
 5    in a state court matter in California to appear for a
 6    deposition in California, as opposed to on the East Coast, or
 7    what this has to do with any of the documents that are subject
 8    of this.
 9            Citibank had not received a subpoena or a notice of
10    deposition in connection with this Durham estate matter.
11            Now, as to the documents, these are, as I mentioned,
12    your Honor, documents that we understand were in Ms. Juliano's
13    possession when she worked for Citibank.  And then, when she
14    stopped working for Citibank, all of those documents should
15    have been returned, but they weren't.
16            In April of last year, we did write a letter to
17    Ms. Juliano, asking her to return one specific set of documents
18    that we were told about at the time.  Judge Karas was aware of
19    that.  There was a letter that we wrote on May 5th, 2009, to
20    the Court about that issue, basically saying that we had asked
21    for the return of these documents, that we had them, and that
22    we were going to keep them in our possession, and if they were
23    relevant to discovery, we would have them and they could serve
24    a discovery request in order to obtain those documents.  That
25    was endorsed by Judge Karas on May 6th of 2009, and I can read
                    MARY M. STATEN, CSR, RPR, RMR
                         (914) 390-4027
                                                                   10
1053culMS
 1    the Court the notation --
 2            THE COURT:  Yes.
 3            MR. BLUMENFELD:  -- that's there.  It might be
 4    helpful.
 5            "Citibank is directed to keep the documents
 6    Ms. Juliano provided to it until further order of the Court.
 7    These documents are to be kept in a safe place until such
 8    order.  Otherwise, the Court believes that any discovery in
 9    this case is premature, as is any request to consolidate this
10    case with Ms. Juliano's benefits cases, as they involve estate
11    disputes.  Finally, the Court will not expedite this case, in
12    light of the e-mail from Mr. Bock to Mr. Cullen dated
13    January 23rd, 2009."
14            That last part has to do with another issue that I
15    think has now been resolved, but it's in the record if the
16    Court is interested.
17            THE COURT:  Okay.  Just one second.
18            So the relief you're seeking or Citibank is seeking
19    from the Court concerning these documents is what?  Just so
20    I --
21            MR. BLUMENFELD:  Your Honor, principally, to have
22    those documents returned to Citibank.  If Mr. Cullen and
23    Ms. Juliano are entitled to those documents in discovery in
24    this case or discovery in some other action, they can serve a
25    discovery request, and it will be addressed accordingly.  But
                    MARY M. STATEN, CSR, RPR, RMR
                         (914) 390-4027
                                                                   11
1053culMS
 1    as former employees, when both of them ceased being employees
 2    of the company, they had an obligation to return all company
                              Page 5

1053culMS.txt

```
 3   property and documents to the company, and we'd like them to do
 4   so.
 5        At a minimum, your Honor, these documents shouldn't be
 6   filed.  As I mentioned, they contain -- they very well may
 7   contain privileged material.  I know in the first set of
 8   documents that Ms. Juliano did return to us, there was some
 9   privileged material.  There was also some confidential
10   communications and confidential information belonging to
11   Citibank customers.  So at a minimum, we would ask that the
12   Court take possession of those documents pending any
13   determination as to whether discovery should be permitted.
14        THE COURT:  Okay.  And as far as what's going on in
15   California, that's -- I'm not sure.
16        MR. BLUMENFELD:  I'm not counsel to Citibank in
17   connection with anything going on in California.  Citibank, as
18   I understand it, is not a party to the California action.  And
19   so aside from noting that Mr. Durham has served a notice of
20   deposition on nonparties out of state without a subpoena;
21   obviously, I can't give legal advice to anybody in association
22   with that issue, either.
23        THE COURT:  Okay.  All right.
24        Thank you.
25        MR. BLUMENFELD:  Thank you.
            MARY M. STATEN, CSR, RPR, RMR
                 (914) 390-4027
```

                                                                    12

1053culMS

```
 1        THE COURT:  All right.  Mr. Cullen, now, you have
 2   these documents, they're in your possession, or Ms. Juliano?
 3        MR. CULLEN:  Actually, they're in the possession of
 4   this federal court, your Honor.
 5        THE COURT:  Who has them?
 6        MR. CULLEN:  This court.
 7        THE COURT:  Judge Karas?
 8        MR. CULLEN:  Yes.  He's got control of them.  Jeremy
 9   seized these documents from Ms. Juliano.  Specifically, there
10   is a twelve-page memo that we wrote on the Herzog matter that
11   basically said this trust is a fraud.  It was created by fraud.
12   And then the bank compounded it by then trying to cover it up
13   from a judge, a New York Surrogate Judge by the name of Judge
14   Daniel Jacob.
15        Mr. Durham has had the Attorney General's Office call
16   me, he's -- under the control of the currency office, call me.
17   And I said I'm not doing anything without a subpoena.  So I've
18   been holding him at bay, waiting to get some direction as to
19   where this should go.
20        THE COURT:  Okay.  Well, let me ask you this.  These
21   documents that we're talking about, do you personally have a
22   copy of those documents in your possession?
23        MR. CULLEN:  To be honest, your Honor, I'm not sure.
24   And if I may explain why.
25        When Ms. Juliano had her second breakdown caused by a
            MARY M. STATEN, CSR, RPR, RMR
                 (914) 390-4027
```

                                                                    13

1053culMS

```
 1   particular manager, she went home.  She went to a psychiatrist.
 2   She went to the hospital.  When she came home on March 26th, I
 3   went over -- I took her husband a few times to visit her in the
 4   hospital, because he's both mentally -- was both mentally and
 5   physically handicapped.  During those visits, when I took her
 6   home from the hospital, there were papers all over the place.
 7   She put the ones that were specific, what he call our homework
```
                            Page 6

1053culMS.txt

```
 8    which she had taken home that night and which were important,
 9    into a sealed envelope.  She signed across it, sealed it.
10    There was other material that wouldn't fit in the envelope.
11    And over time, Mr. Juliano seized that, because he said it's
12    been more than two years, it's marital property, it's in his
13    house.  He's trying to get the bank to pick it up.  The bank
14    never picked it up.  Under New York State law, your Honor, it's
15    abandoned property.  It's his.
16              On March 5th, there was a Google entry about Ughette
17    M. Clark.  And she's now known as the "forgotten heiress."
18    This is the other aspect of the fraud that I was trying to
19    report.
20              THE COURT:  Okay.  Yes.  Right now, I'm just trying to
21    focus on these documents.
22              MR. CULLEN:  Okay.
23              THE COURT:  So you don't know right now whether or not
24    you have these documents that we're talking about, you
25    personally.
```

                   MARY M. STATEN, CSR, RPR, RMR
                         (914) 390-4027
                                                                    14

1053culMS

```
 1              MR. CULLEN:  I have copies.
 2              THE COURT:  You personally.
 3              MR. CULLEN:  No, there are -- Mr. Juliano had boxes of
 4    it in his garage.  Two days -- by coincidence, three days
 5    before he passed away, he signed a letter addressed to Judge
 6    Karas saying he's turning the documents over to me.
 7              I have the boxes that are removed from the garage in
 8    my home.  I haven't gone through them, because just looking at
 9    them real fast, some of them look like training manuals, some
10    of them look like books like this, which talk about the rules
11    of an employee, that if an employee reports wrongdoing,
12    there'll be no retaliation, manuals that were sent home to us
13    so we can go through item by item and decide what is important,
14    what isn't, what is bank property.  And I'm willing and happy
15    to do that.
16              But in the meantime, we're being subpoenaed.  It's
17    arriving at my home today to be subpoenaed to go out to
18    California.  And this man wants the documents, which means that
19    he'll go through the files and see what deals with Herzog.  And
20    the other stuff, of course, he wouldn't be entitled to.
21              THE COURT:  Okay.  Let me ask Ms. Juliano.
22              Do you have any of these documents or all these
23    documents that we're talking about, as far as you know, they
24    have been given over to Mr. Cullen?
25              MS. JULIANO:  Yes.
```

                   MARY M. STATEN, CSR, RPR, RMR
                         (914) 390-4027
                                                                    15

1053culMS

```
 1              THE COURT:  Okay.  So you personally don't have these
 2    documents.
 3              MS. JULIANO:  No.
 4              THE COURT:  Whatever documents we're talking about,
 5    Mr. Cullen would have, if anyone does.
 6              MS. JULIANO:  Yes.
 7              THE COURT:  Okay.  All right.
 8              Yes, for Defendant Citibank, yes.
 9              Mr. Blumenfeld, once again, what's your understanding
10    of the documents?  I'm not interested in, you know, like a book
11    on the regulations and policies and all that.  We're talking
12    about some type of personal documents?  These are the ones that
```
                              Page 7

1053culMS.txt

```
13   you're interested in that would have information from other
14   customers?
15            MR. BLUMENFELD:  From any Citibank customers or
16   privileged material belonging to Citibank.  Both of the
17   plaintiffs worked closely with Citibank's inside and outside
18   counsel on various matters.  And their customer information,
19   anything that's not a training manual or, you know, requests to
20   go out to lunch, things of that nature, all belong to Citibank
21   and constitute privileged communications belonging to Citibank
22   and/or confidential communications belonging to Citibank about
23   Citibank's customers.
24            Mr. Cullen and Ms. Juliano were not involved, at least
25   as I understand anything, in this trust department in any
```

MARY M. STATEN, CSR, RPR, RMR<br>(914) 390-4027

16

1053culMS

```
1    capacity other than employees.  So the customer information
2    we're talking about would not relate to Mr. Cullen, would not
3    relate to Mr. Juliano -- Ms. Juliano.  Excuse me.  It might
4    relate to Citibank people in whom Citibank was a trust officer
5    or for whom Citibank served as trustee.  Those are Citibank's
6    customers.  Obviously, those materials are important to
7    Citibank, the confidentiality of those materials.
8            THE COURT:  Okay.  Are there any documents that just
9    involved -- I guess it would be like Mr. Juliano or --
10           MR. BLUMENFELD:  It was Ms. Juliano --
11           THE COURT:  Ms. Juliano.  Okay.
12           MR. BLUMENFELD:  -- that was employed by Citibank.
13           THE COURT:  Those ones that just involved Ms. Juliano
14   personally, these are documents that they would have the right
15   to be in possession of?  Is that it?
16           MR. BLUMENFELD:  I believe if it's just an employee
17   handbook or information about her personal, you know, wages,
18   salaries, things of that nature, that's not what we're looking
19   to try and obtain here.
20           THE COURT:  You're looking more for materials,
21   documents that involve other customers of Citibank?
22           MR. BLUMENFELD:  That involve customers of Citibank,
23   yes.
24           THE COURT:  Okay.  Mr. Cullen.
25           MR. CULLEN:  Your Honor, first, I'd like to correct
```

MARY M. STATEN, CSR, RPR, RMR<br>(914) 390-4027

17

1053culMS

```
1    the misstatement that Mr. Blumenfeld made.
2            He wrote a letter -- e-mail to Roy Durham saying he
3    represented Citibank in this matter, and he wanted information,
4    what court, what time and when.  He's made contact with Roy
5    Durham.
6            I have asked for six months for the bank to intervene.
7    I happen to have a letter of indemnification that says if any
8    bank client draws me into any of their litigation that the bank
9    will pay for all my legal expenses.  I've had expenses trying
10   to keep Mr. Durham away from me.  I happen to be very
11   sympathetic to his cause, but he is becoming a pain to me and
12   to Ms. Juliano.
13           But the point about the documents, you had a question.
14   Ms. Juliano and I wrote documents about bank fraud.  And these
15   are the documents that in the end are going to bring Citibank
16   down as for committing client fraud.  There are millions of
17   dollars involved in this, and it's a series of fraud.  And I
```

Page 8

1053culMS.txt

```
18    have a right to keep those documents and turn it over to the
19    Attorney General, your Honor.
20            THE COURT:  Okay.  Here's what I'm going to direct.
21            Number one, these documents should not be filed in
22    this court in this case at this time until further order of the
23    Court.
24            Number two, I am going to have to look at by myself in
25    camera any documents that deal with customers of Citibank.  You
```
                    MARY M. STATEN, CSR, RPR, RMR
                          (914) 390-4027
                                                              18
1053culMS
```
 1    can keep a copy, but I need to see a copy so I can tell and try
 2    to make a determination whether or not these documents -- what
 3    should happen to these documents.
 4            I do not need to see handbooks, anything that are
 5    payroll records of Ms. Juliano, or anything of that nature.
 6    But what I need to see are any materials, documents that you
 7    have that deal with customers of Citibank.  All right?
 8            Do you have an understanding what I'm looking for?
 9            MR. CULLEN:  I do, your Honor.  It's -- you're very
10    clear.
11            THE COURT:  Okay.  Now, I will look at them and try to
12    make a determination of whether or not -- well, as to what
13    should happen to these documents.  If I need to speak with the
14    parties again, of course, we'll let you know before I make that
15    determination.  I might be able to make it just by looking at
16    them.  I don't know yet.
17            So how much time do you need to go through these
18    materials and give me --
19            MR. CULLEN:  Your Honor, I would need -- let's see.
20    I, of course, have to confer with Ms. Juliano who is not always
21    available.
22            Two weeks, your Honor.  And then, however, I'd like to
23    remind this Court that my purpose of coming to this court and
24    being dragged out of local state court was:  I was trying to
25    send a letter to the victims of the bank's fraud, telling them
```
                    MARY M. STATEN, CSR, RPR, RMR
                          (914) 390-4027
                                                              19
1053culMS
```
 1    what I witnessed, let them show it to their attorneys and do
 2    whatever they want.  But I'm burdened by a terrible conscience
 3    of what we witnessed and are trying to report.  We tried to put
 4    it on the bank's internal watch list system, which is covered
 5    by Sarbanes-Oxley.  We tried to turn it into local state court
 6    and were removed.
 7            THE COURT:  All right.  I understand.
 8            MR. CULLEN:  And here we are still trying to get a
 9    letter to these people telling them what we witnessed.  The
10    lady is 103, your Honor.
11            THE COURT:  Yes.  The only thing that I'm doing now,
12    based on what Judge Karas referred to me -- it's not -- he has
13    made it clear, from what I can see, that it's not opening
14    discovery up, but just making a decision on these documents,
15    based on the letters that have been sent on this matter, sent
16    to him, sent to me.  It's been referred to me now.  So I need
17    to see those documents.
18            If I can get them in two weeks, all you have to do is
19    put them in an envelope.  If you want to make a cover letter
20    with it, that's fine.  You don't have to give copies of the
21    documents to Mr. Blumenfeld, but if you send a cover letter,
22    that cover letter has to go to Mr. Blumenfeld.
```
                              Page 9

```
                          1053culMS.txt
23            MR. CULLEN:  I understand, your Honor.
24            THE COURT:  All right.  So I'll be expecting that in
25      two weeks, and I'll take a look at them and make a decision.
                     MARY M. STATEN, CSR, RPR, RMR
                          (914) 390-4027
```

```
        1053culMS
 1            Yes.
 2            MR. BLUMENFELD:  Your Honor, if I may, just one other
 3      point.
 4            You're going to allow Mr. Cullen to retain a copy of
 5      the documents which I understand he's done?
 6            THE COURT:  At this point, because I don't know what
 7      they are.
 8            MR. BLUMENFELD:  Understood.
 9            Could we get, until there is a ruling from the Court
10      as to these documents, some order prohibiting Mr. Cullen from
11      using these documents for other purposes or disclosing them to
12      third parties?
13            THE COURT:  Yes.
14            Mr. Cullen.
15            MR. CULLEN:  Your Honor, I have a summons to go to
16      California court.  I am not going to violate any kind of court
17      order.  I am trying to be a legal, honest, upright citizen.
18      And I'm not going to -- this man believes that Veronica and I
19      were part of the conspiracy of silence in Citibank, which is so
20      far from the truth.  But that's what he believes.
21            THE COURT:  Okay.  Well, let me ask you this.  This
22      summons that you're talking about, what date does it have on
23      there?  When do you have to go to California?
24            MR. CULLEN:  The 11th -- well, the 12th.  We have to
25      get out there on the 11th.  It's the 12th of May, 12th and 13th
                     MARY M. STATEN, CSR, RPR, RMR
                          (914) 390-4027
```

```
        1053culMS
 1      is what he's talking about.  He's going to have the court
 2      reporter get the room, and all that.
 3            I can show you his e-mail, which is going to be a
 4      signed copy.  I understand it's arriving at my home today.  And
 5      I'm going to be interviewed on the 12th; on the 13th,
 6      Ms. Juliano.
 7            And then we've asked that I be allowed to sit in the
 8      room, because, to be honest, she's a little emotionally fragile
 9      still from what's happened to her.  So I'll be just allowed to
10      sit in the room as an observer.  But that's the 12th and 13th
11      of May, in San Diego.
12            THE COURT:  And this is a subpoena from who again?
13            MR. CULLEN:  From Roy Durham.  I can give you a copy.
14      Mr. Blumenfeld has a copy.
15            May I approach?
16            THE COURT:  Yes, I would like to see it.
17            (Pause)
18            THE COURT:  All right.  I'm going to have to look at
19      these documents before there is going to be any further
20      distribution of these documents to anyone.  All right?  You can
21      keep a copy of them, but no further distribution or
22      dissemination of these documents to anyone.  If anyone asks you
23      why you didn't bring documents, you can say the judge in the
24      Southern District of New York has directed you not to make any
25      distribution until I look at these documents in camera and
                     MARY M. STATEN, CSR, RPR, RMR
                          (914) 390-4027
                             Page 10
```

1053culMS.txt

22

1053culMS
1  determine what should happen to them.
2          MR. CULLEN:  May I advance delivery of the documents
3  to you by a week so we can get a decision?
4          THE COURT:  Oh, yes.  The sooner you give them to me,
5  the sooner I can make a decision.  So if you can get them to
6  me --
7          MR. CULLEN:  Is it possible that you would make it
8  before the -- like a week's time?
9          THE COURT:  Depending on the volume of the documents.
10  I'll do my best.
11         MR. CULLEN:  It's not really much, your Honor.
12         THE COURT:  All right.  Good.  Why don't we say one
13  week.  So instead of --
14         THE DEPUTY CLERK:  That would be May 10th, Judge.  May
15  the 10th.
16         THE COURT:  Okay.  Well, let's see.  Today is the 3rd.
17  Can you get them before that?  Because I'll try to get you a
18  decision before --
19         MR. CULLEN:  When are you available?
20         MS. JULIANO:  (Unintelligible).
21         MR. CULLEN:  Up to the 10th.  Okay.
22         Well, what I would like, your Honor, I can get it to
23  you by Friday.
24         THE COURT:  Yes, if you can get them by --
25         MR. CULLEN:  But then what I would need, your Honor,
                    MARY M. STATEN, CSR, RPR, RMR
                         (914) 390-4027

23

1053culMS
1  is some kind of a written something that I can present to the
2  California court as to why I don't have documents.
3          THE COURT:  Here's what you can do.  This is being
4  tape-recorded.
5          MR. CULLEN:  This?
6          THE COURT:  Yes.  Every conference in this court is
7  tape-recorded on a tape-recording machine.
8          MR. CULLEN:  I wasn't aware of that.
9          THE COURT:  You can order --
10         MR. CULLEN:  A transcript?
11         THE COURT:  -- a transcript of this.  Ms. Hilbert can
12  tell you.  The forms are right there.
13         MR. CULLEN:  Will Mr. Blumenfeld be paying for that,
14  your Honor?
15         THE COURT:  Well, you know, whoever orders it is --
16         MR. CULLEN:  This problem is caused because he delayed
17  this a year.  He's waiting for Ughette Clark to die.
18         THE COURT:  Okay.  That's what it is.  If you want a
19  copy of this transcript, there is a basis and a process for you
20  to do it.  If you want it, whoever wants to order it, that's
21  what you have to do.  I can't do any more than that.  There
22  will be no further orders coming from the Court concerning this
23  matter.
24         But you do have the right to order a transcript of the
25  proceeding.
                    MARY M. STATEN, CSR, RPR, RMR
                         (914) 390-4027

24

1053culMS
1          MR. CULLEN:  Thank you, your Honor.
2          THE COURT:  Okay.  The matter is adjourned.  We'll
3  take it from there.
                         Page 11

```
                        1053culMS.txt
  4            MR. BLUMENFELD:  Thank you, your Honor.
  5            THE COURT:  You're welcome.
  6                              -    -    -
  7
  8
  9
 10
 11
 12
 13
 14
 15
 16
 17
 18
 19
 20
 21
 22
 23
 24
 25


               MARY M. STATEN, CSR, RPR, RMR
                      (914) 390-4027
```

Page 12